NOTICE

Decision filed 06/02/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 170199-U

NO. 5-17-0199

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-613 |
| | ) | |
| CHARLES LITTLE JR., | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Overstreet and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the defendant failed to make a substantial showing of a constitutional violation, and the defendant's postconviction counsel provided him with reasonable assistance, and any argument to the contrary would lack merit, appointed appellate counsel is granted leave to withdraw, and the order denying the defendant's amended postconviction petition is affirmed.

¶ 2    The defendant, Charles Little Jr., pleaded guilty to aggravated battery and was sentenced to imprisonment for 12 years, all pursuant to a plea agreement with the State. He neither moved to withdraw the guilty plea nor took a direct appeal. Two and one-half years after pleading guilty, the defendant filed a *pro se* petition for postconviction relief. Appointed postconviction counsel filed an amended postconviction petition. After an evidentiary hearing, the circuit court denied the amended petition. The defendant perfected the instant appeal from the denial order, and the circuit court appointed the Office of the State Appellate Defender (OSAD) to represent him herein.

OSAD has concluded that this appeal lacks merit. On that basis, and in accordance with *Pennsylvania v. Finley*, 481 U.S. 551 (1987), OSAD has filed in this court a motion to withdraw as the defendant's appointed appellate attorney, along with a brief in support of the motion. OSAD has served the defendant with a copy of its *Finley* motion and brief. This court has provided the defendant with ample opportunity to file a *pro se* brief, memorandum, etc., responding or objecting to OSAD's motion or explaining why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's motion and brief, and the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court, denying the defendant's amended postconviction petition, is affirmed.

¶ 3                                     BACKGROUND

¶ 4     In 2012, the State charged the defendant with three counts of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2012)), a Class X felony. The information alleged that the defendant and a codefendant had shot one individual in an arm and had shot another individual in a leg and a hand.

¶ 5     On January 4, 2013, the defendant, his attorney, and an assistant state's attorney appeared before the circuit court. The parties informed the court that they had reached an agreement under which the defendant would plead guilty to count 1 of the information and would be sentenced to imprisonment for a term of 12 years, to be followed by mandatory supervised release (MSR) for a term of 3 years; meanwhile, the two other counts charged in the information, plus an unrelated aggravated-battery charge in a separate case, would be dismissed. In answer to queries from the court, the defendant indicated that nobody had promised him anything apart from the terms of the plea agreement in order to persuade him to plead guilty, that nobody had threatened him in any way, and that he understood the proceedings. The court admonished the defendant that he had a

2

right to a trial by judge or by jury, as he chose, the right to confront and cross-examine the State's witnesses, the right to call witnesses, and the right against self-incrimination, while the State had the burden of proving him guilty beyond a reasonable doubt, but a plea of guilty would result in his giving up all those rights and a trial would not be held, and the defendant indicated his understanding. The judge admonished the defendant as to the nature of the charges and the possible penalties, and the defendant indicated his understanding. The State presented a factual basis. The court asked the defendant how he wished to plead on count 1, and the defendant answered, "Guilty." The court accepted the plea and adopted the terms of the plea agreement, sentencing the defendant to imprisonment for 12 years and MSR for 3 years, and dismissing the other two counts. Finally, the court admonished the defendant as to his appeal rights. On that same day, the court entered a written judgment reflecting the 12-year prison sentence and 3-year MSR term.

¶ 6    The defendant did not move to withdraw his guilty plea. He did not initiate a direct appeal.

¶ 7    On July 29, 2015, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). The circuit court appointed postconviction counsel for the defendant. In September 2015, the State filed a motion to dismiss the *pro se* petition. The court granted the defendant time to file an amended postconviction petition.

¶ 8    On November 23, 2015, the defendant, by counsel, filed an amended postconviction petition. He claimed to have been deprived of due process, equal protection, and the effective assistance of counsel.

¶ 9    In regard to the claimed deprivation of due process and equal protection, the defendant alleged the following: (1) At the time of the plea hearing, the judge who presided at the hearing was under federal investigation for drug and weapons charges, but the state's attorney did not

3

disclose this fact to the defendant. The federal investigation of the plea judge, as well as the continuing use of illegal drugs by the plea judge and by the assistant state's attorney who represented the State at the plea hearing, "so infected the proceedings, including the plea and the sentencing, such that the [defendant] could not possibly be given his constitutionally granted right to a fair trial." (2) The defendant did not plead guilty voluntarily or intelligently, but only as a result of "threats, coercion, physical abuse, mistreatment and intimidation" by St. Clair County Jail staff.

¶ 10    In regard to the claimed deprivation of the effective assistance of counsel, the defendant alleged the following: (1) His attorney relied on coercion and deception in order to persuade the defendant that pleading guilty was his only real choice. (2) His attorney did not show him all of the discovery provided by the State.

¶ 11    In January 2016, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Counsel certified that he had "examined the entire record of the proceedings of the plea of guilty and sentencing," had "consulted with [the defendant] by correspondence" and in person in order "to ascertain his contentions of deprivation of constitutional rights," and had amended the *pro se* petition as necessary "for adequate presentation of [the defendant's] contentions."

¶ 12    The State filed a motion to dismiss the amended postconviction petition, but the court denied that motion after a hearing. The State filed an answer to the amended petition. Discovery was conducted.

¶ 13    On May 17, 2017, the cause proceeded to an evidentiary hearing on the amended postconviction petition. The defendant testified on his own behalf. He acknowledged that his amended postconviction petition included an allegation that the judge who had presided at his plea

4

hearing was a user of illegal drugs, but he testified that he did not notice any sign that the judge was under the influence of drugs during the plea hearing. The defendant decided to plead guilty after "one of the officers" at the St. Clair County Jail, where he was being held in this case, bragged that he had "whooped somebody in the basement" and told the defendant that he would beat him, too. At the time of the evidentiary hearing, the defendant could not recall the name of this officer. Fearful of a beating by the officer, desperate to get away from the cold and rat-infested jail with its "rude and reckless" staff, and wanting to see his family again, the defendant resolved "to go on ahead and cop out." As for the claim that his plea counsel had coerced him into pleading guilty, the defendant testified that counsel had told him that "they" had "a tape of [the defendant]." The defendant asked counsel to show him the tape but counsel temporized and never showed him the tape. According to the defendant, he "didn't trust" plea counsel, who "looked like the type of person" who would harm a client just to "[m]ake [him]self look good." The defendant testified that he would not have pleaded guilty but for the officer's threat, the jail conditions, plea counsel's coercion, and his own lack of confidence in counsel.

¶ 14    During cross-examination by the State, the defendant testified that he did not file a complaint with jail officials concerning the threat made by the jail officer. At some point prior to the guilty plea, the defendant informed his attorney about the threat, but he did not ask the attorney to take any action concerning the threat. "He wasn't going to do nothing anyway," the defendant explained. Approximately one month after the threat, the defendant entered his guilty plea. The defendant acknowledged that at the plea hearing, he did not inform the court about the officer's threat, even though the court asked him whether he had been threatened. The defendant also acknowledged that he did not inform the court of any dissatisfaction with his attorney. Although the defendant had wanted the State to agree to an 8-year prison sentence, he pleaded guilty for a

5

12-year sentence after concluding that it was the best available option for him. He acknowledged that the court at the plea hearing admonished him about an appeal and the filing of a motion to withdraw the guilty plea, but he explained that he did not hear those admonishments, due to the anxiety he was experiencing at the time.

¶ 15    The defendant did not call any witness, other than himself, at the evidentiary hearing. The State called two witnesses—the superintendent of the St. Clair County Jail, and the defendant's plea counsel.

¶ 16    The jail superintendent testified that every inmate, upon entering the jail, is given a handbook that explains how to file a complaint in regard to any threats, mistreatment, etc., that he has experienced at the jail. Jail records showed that the defendant never filed such a complaint.

¶ 17    The defendant's plea attorney testified that after he was appointed to represent the defendant in the instant case, he examined all of the discovery in the case. The discovery included a surveillance videotape. Subsequently, counsel met with the defendant and discussed the discovery. Counsel did not show the videotape to the defendant; at the evidenctiary hearing, counsel could not recall the defendant's ever asking to view the tape. Counsel shared with the defendant his thoughts on the case, including the overall strength of the State's evidence, including the videotape. The two of them discussed whether the defendant should plead guilty or proceed to trial, and the defendant wanted to pursue a plea agreement. At that point, counsel began negotiations with the State. Eventually, the defendant decided to plead guilty. Counsel did not threaten or coerce the defendant into pleading guilty. Also, counsel did not recall the defendant's ever stating that he wanted to proceed to trial. As the plea hearing was about to begin, the defendant did not express any hesitation about pleading guilty. The defendant never expressed to counsel any dissatisfaction with the representation he provided, or any desire for a different lawyer.

6

In regard to the judge who had presided at the plea hearing, counsel testified that he did not recall any unusual behavior or comments.

¶ 18    During cross-examination by the defendant's postconviction counsel, plea counsel further explained why he did not show the defendant the surveillance tape. Counsel stated that he is not allowed to deliver discovery to the jail. He stated that during the early phase of handling a criminal case, he examines the discovery and then discusses the discovery with his client. If a trial date is approaching, he arranges for a time and place to review discovery with the client. In the instant case, the defendant directed counsel to seek a plea agreement early in counsel's representation of the defendant.

¶ 19    At the end of the evidentiary hearing, the court commented on the evidence presented. The court indicated, *inter alia*, that it believed plea counsel's testimony regarding the videotape. Ultimately, the court concluded that the defendant had failed to meet his burden of proof, and denied the amended postconviction petition. The court entered a written denial order.

¶ 20    The defendant filed a timely notice of appeal from the order denying his postconviction petition, thus perfecting the instant appeal. The circuit court appointed OSAD to represent the defendant in this appeal.

¶ 21                                   ANALYSIS

¶ 22    The defendant appeals from the circuit court's order denying his amended postconviction petition. As previously mentioned, the defendant's appointed attorney on appeal, OSAD, has filed a *Finley* motion to withdraw as counsel; the defendant has not filed any sort of response thereto. In the brief accompanying its *Finley* motion, OSAD presents two issues that potentially could be raised in this appeal, *viz.*: (1) whether the circuit court committed manifest error in denying the amended postconviction petition, and (2) whether the attorney who represented the defendant

7

during postconviction proceedings in the circuit court complied with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

¶ 23    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)) "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Tate*, 2012 IL 112214, ¶ 8.  In the instant case, the defendant commenced postconviction proceedings by filing in the circuit court a *pro se* petition for postconviction relief.  See 725 ILCS 5/122-1 (West 2014).  The circuit court appointed postconviction counsel for the defendant (see *id.* § 122-4), and counsel filed an amended postconviction petition.  Eventually, this proceeding progressed to the third (and final)  stage of postconviction proceedings.  See, *e.g.*, *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).  That is, it reached the stage at which the circuit court conducted an evidentiary hearing.  See 725 ILCS 5/122-6 (West 2014); *Gaultney*, 174 Ill. 2d at 418.  At the evidentiary hearing, the defendant presented new evidence, and the court made factual findings.  See 725 ILCS 5/122-6 (West 2014); *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).  Ultimately, the court ruled that the defendant had failed to meet his burden of making a substantial showing of a constitutional violation.  See *Pendleton*, 223 Ill. 2d at 473.

¶ 24    The first potential issue raised by OSAD is whether the circuit court committed manifest error in denying the defendant's amended postconviction petition.  Where, as here, a circuit court denies a postconviction petition after an evidentiary hearing, this court reviews the denial order for manifest error.  *People v. Coleman*, 2013 IL 113307, ¶ 98.  " 'Manifest error' is error which is clearly plain, evident, and indisputable." *People v. Taylor*, 237 Ill. 2d 356, 373 (2010).  The denial order will be disturbed only if it is against the manifest weight of the evidence.  *Id.*

8

¶ 25 There was no error, let alone manifest error, in the denial of the defendant's amended postconviction petition. In the petition, the defendant claimed to have been deprived of due process and equal protection, because (1) at the time of the guilty-plea hearing, the judge who presided at the hearing was under federal investigation for drug and weapons charges, and both the plea judge and the assistant state's attorney who represented the State at the plea hearing were using illegal drugs in that timeframe, but neither the investigation nor the drug use had been disclosed to the defendant, and (2) the defendant did not plead guilty voluntarily or intelligently, but only as a result of threats and mistreatment by the staff at the St. Clair County Jail, where the defendant was being held. Also in the petition, the defendant claimed to have been deprived of the effective assistance of counsel, because plea counsel (1) relied on coercion and deception in order to persuade the defendant that pleading guilty was his only real choice, and (2) did not show him all of the discovery provided by the State.

¶ 26 In order to make a substantial showing that a deprivation of due process or equal protection resulted from illegal activity by the plea judge or by the assistant state's attorney who represented the State at the plea hearing, the defendant needed to establish some relationship or nexus between the illegal activity and the defendant's own particular case. See *People v. Titone*, 151 Ill. 2d 19, 30-31 (1992); *People v. Fair*, 193 Ill. 2d 256, 261-63 (2000). At the evidentiary hearing, the defendant failed to establish any nexus between the illegal activity and the instant case. The defendant pleaded guilty pursuant to a fully negotiated plea agreement under which he would plead guilty to a single Class X felony and would be sentenced to 12 years in prison, and three other Class X felonies (two in the instant case and one in a separate case) would be dismissed. The judge admonished him in substantial compliance with Illinois Supreme Court Rule 402 (eff. July 1, 2012) and imposed the agreed-upon sentence. Nothing in the record on appeal indicates that

9

illegal activity by the plea judge or by the assistant state's attorney harmed the defendant or affected his case in any way.

¶ 27   The defendant also failed to make a substantial showing that his guilty plea was involuntary and unknowing and that it resulted from threats and abuse by St. Clair County Jail staff and from awful conditions in the jail.   At the evidentiary hearing, the defendant testified about one (apparently very brief) threat made by an unidentified officer at the jail.   The threat was spoken and general in nature; it did not include any mention of how the defendant should plead, and it was unaccompanied by any physical action.   The defendant did not report the alleged threat to jail officials or to his plea attorney.   Also, the defendant never was physically abused at the jail.   He pleaded guilty a full month after the threat, and at the plea hearing, the defendant indicated that he had not been threatened.   The claim that the defendant pleaded guilty due to a threat was woefully unsupported by evidence.   As for the claim that jail conditions (cold temperatures, rude staff, etc.) were the reason for his guilty plea, such conditions do not invalidate an otherwise intelligent and voluntary plea.   See *People v. St. Pierre*, 146 Ill. 2d 494, 508 (1992).

¶ 28   The defendant's amended postconviction petition also included a claim that plea counsel had provided constitutionally ineffective assistance by coercing and deceiving him into pleading guilty, which counsel accomplished by falsely telling him that the State possessed an incriminating videotape and by refusing to show the tape to the defendant. Establishing an ineffective-assistance claim requires a defendant to show both (1) that the attorney's representation fell below an objective standard of reasonableness and (2) a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different.   *Strickland v. Washington*, 466 U.S. 668, 687, 695 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984).

10

¶ 29 At the evidentiary hearing, the defendant provided scant testimony in regard to his ineffective-assistance claim. Essentially, he testified that his attorney told him that the State's evidence against him included a videotape, but he felt confident that the videotape did not actually exist, and even though the defendant asked counsel to show him the videotape, counsel never showed it to him, and the defendant suspected that counsel mentioned a nonexistent videotape for the purpose of coercing him into pleading guilty. Meanwhile, plea counsel testified at the evidentiary hearing that the videotape did in fact exist, and that he viewed the videotape, and it affected his assessment of the strength of the State's case against the defendant. Plea counsel denied ever threatening or coercing the defendant. He also offered a reasonable explanation for not showing the videotape to the defendant. First, he could not recall that the defendant ever asked to see it. Second, he typically showed the State's evidence to incarcerated clients, and reviewed it with them, only as a trial date approached, and the defendant in this case decided to pursue a plea agreement in an early phase of counsel's representation of him. At a third-stage evidentiary hearing in a postconviction proceeding, the circuit court serves as the finder of fact; it determines witness credibility, decides the weight to be given testimony and other evidence, and resolves evidentiary conflicts. *People v. Domagala*, 2013 IL 113688, ¶ 34. The court was free to believe plea counsel's testimony.

¶ 30 In short, the circuit court's denial of the defendant's amended petition for postconviction relief was not against the manifest weight of the evidence.

¶ 31 OSAD's second potential issue in this appeal is whether the attorney who represented the defendant during postconviction proceedings in the circuit court complied with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Here, postconviction counsel filed a certificate of compliance with Rule 651(c), discussed *supra*, thus creating a presumption that he substantially

11

complied with the rule and provided the reasonable level of assistance that postconviction attorneys are obliged to provide. See *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23; *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Nothing in the record rebuts the presumption. Postconviction counsel prepared and filed a well-drafted amended postconviction petition, and the postconviction proceedings advanced to the third stage. At the evidentiary hearing, postconviction counsel called the defendant to testify in support of the postconviction claims, and he asked questions that brought out the defendant's thoughts, observations, and motivations, and counsel cross-examined the State's two witnesses. The record tends to confirm the assertions in postconviction counsel's certificate of compliance.

¶ 32                                CONCLUSION

¶ 33    For the foregoing reasons, neither of OSAD's potential issues for this appeal has any merit. Nothing in the record presents any issue of arguable merit. Accordingly, OSAD is granted leave to withdraw as the defendant's counsel on appeal, and the judgment of the circuit court, denying the defendant's amended postconviction petition, is affirmed.

¶ 34    Motion granted; judgment affirmed.